## Huss *et al. versus* Stephens *et ux.*

1. In written instruments, the word "*heirs*" is to be accepted in its technical sense, unless there be something in the context to interpret it differently.

2. Although a stricter construction is applied to deeds than to wills, yet, in deeds, the intent of the grantor, when legal, is a governing principle in their construction; this principle applies as well to the word "heirs" as to any other part of a deed, and it will be construed a word of purchase if the intent require it.

3. By a deed between A. Lantz, Sr., of the first part, and "*the heirs of Andrew Lantz, Jr.,*" of the second part, the grantor, "*for the natural love and affection he hath for his grandchildren,*" as well as for $1, granted certain land to the "said party of the second part and to their heirs," A. Lantz, Jr., being then living. *Held*, that word "*grandchildren*" was *designatio personarum*, and that "heirs" was a word of purchase.

4. The rule that a grant to the *heirs* of a person in being is void, is predicated of incorporeal interests which are not susceptible of livery, and does not apply to a conveyance of land in Pennsylvania, where registry stands instead of livery.

4. Evidence of declarations of the grantor at the execution of the deed, that by "heirs" he meant his "*grandchildren*," held to be inadmissible.

5. Morris *v.* Stephens, 10 Wright 200, distinguished from this case.

ERROR to the Court of Common Pleas of the *county of Greene*, where this was an action of ejectment by Barzillai Stephens and Margaret his wife, against Eleanor A. Huss and others, for the undivided fifth part of two tracts of land containing 184 acres.

[Huss v. Stephens.]

Andrew Lantz, Sr., being the owner of a large amount of real estate, conveyed parts of it to several of his children and grandchildren.

On the 6th of June 1853, he executed a deed " between Andrew Lantz, Sr., of the first part, and the *heirs of Andrew Lantz, Jr.,* of the other part"—" for the natural love and affection he hath for his grandchildren, as well as for and in consideration of the sum of *one dollar*—paid by the party of the second part," conveying to " the party of the second part," in the usual form, the land in controversy. The deed was acknowledged January 2d 1854, and recorded April 11th 1859. At the date of the deed Andrew Lantz, Jr., was living, and had four children (the defendants in this suit) living, all which was then known to Andrew Lantz, Sr.; another daughter was born to Andrew Lantz, Jr., after the date of the deed. Andrew Lantz, Sr., died March 3d 1859, leaving five children, of whom Margaret Stephens, the plaintiff, is one. By his will, dated September 5th 1857, he devised all his lands, not already deeded away, to his five children, share and share alike. The writ was issued December 30th 1861, against Andrew Lantz, Jr., who was in possession as tenant at will; he died June 13th 1862. On June 13th 1865, his death was suggested, and the defendants substituted.

On the trial, the defendants offered to prove by the witness, that he drew the deed from the grantor to the grantees, at the request of the grantor, and that the grantor knew when he executed the deed his son Andrew was living, and that the grantor named over his grandchildren, by his son Andrew, viz., Eleanor, Ruth, Eliza, Mary Jane and Catharine Margaret; and he said to the witness, when he was writing the deed, he was going to convey the land to them; and that the grantor said it was his intention to make the deed to his grandchildren, the children of his son Andrew—the same which he had just named over.

The evidence was rejected, and the defendants excepted.

The court (Ewing, P. J.) charged the jury, " that the deed which had been given in evidence by the defendants, was inoperative and void, from the fact that there were no grantees either named or sufficiently described therein. That Andrew Lantz, Jr., being alive at the time of the execution and delivery of said deed, there were no persons who could then be designated as his heirs, and that there was nothing in the context which availed to overrule the technical legal intent of the word ' heirs.' That the verdict must therefore be for the plaintiffs."

To this charge the defendants excepted, and in the Supreme Court assigned for error the rejection of the above-stated evidence, and the charge of the court.

*A. A. Purman* and *N. Ewing*, for plaintiffs in error.—It is well

[Huss *v.* Stephens.]

settled, that uncertainty in a deed, as to named persons or described things, can be supplied by oral testimony; so where persons are described but not named. The offer to show that the grantor meant the grandchildren of his son Andrew, in exclusion of his other grandchildren, was competent, both by reason and common sense: Hetherington *v.* Clark, 6 Casey 393; Hoffman *v.* Downer, 2 Harris 28.

If this were a devise there could be no doubt as to admitting oral testimony: Powell *v.* Biddle, 2 Dallas 70; White *v.* McWilliams, 2 Grant 249; Broomfield *v.* Broomfield, 8 Harris 55. This evidence does not alter the language, and is within the ruling in Barnhart *v.* Riddle, 5 Casey 96; Chalfant *v.* Williams, 11 Id. 212; Musselman *v.* Stoner, 7 Id. 265; Clark *v.* Wethy, 19 Wend. 330.

The word "heirs" in a deed may be controlled by the context, and be construed to mean children: Hays on Estates, p. 35; Guthrie's Appeal, 1 Wright 13. The grandchildren to whom the grantor here bore "natural love and affection," were not technically "*heirs*" of his son, yet he certainly meant his son's *children*. Words of a deed may be modified by the state of things at the time it is to operate: Salisbury *v.* Adams, 19 Pick. 250. General words may be restrained by a particular recital following them: Moore *v.* Griffin, 9 Shep. 350. The presumption that "*heirs*" is used in its legal sense, may be rebutted to sustain a deed which would otherwise be held void: Smith on Executory Interests 237–42. The court will seize the slightest indication on the face of a deed to sustain the intent of the parties: 2 Fearne on Remainders, ch. 10, p. 203; Broom's L. M. 226, 238; 2 Blackstone's Com. 379, 380; Co. Litt. 223; 7 Willes 682; 4 Dallas 345; 5 W. & S. 111–3; 3 Id. 160, 303; Id. 160; Sheppard Touchstone 234–37; Cox *v.* Freidly, 9 Casey 124–30; Brown *v.* Brook, 1 Casey 213; 2 Parsons on Cont. 8.

The construction that the grantor by the term "heirs of his son Andrew" meant the children of his son Andrew, is reasonable, supports the deed, is consistent with common sense, and the intention of the grantor, and the substance of the transaction.

The construction of the court was repugnant to the intent and in violation of law, instead of laying hold of the whole instrument to effectuate it according to the intent of the parties: 3 Atk. 135; Sheppard Touchstone 85–88 and 236; Broom's L. M. 276; 2 Blackstone's Com. 379, 380; Mosely *v.* Mott, M. & W. 533. The court overlooked the spirit of the deed, and did not give proper weight to the time and circumstances of its execution: Bryen *v.* Bradley, 16 Conn. 474; Jameson *v.* Palmer, 7 Shep. 425; Means *v.* Presbyterian Church, 3 W. & S. 303.

This case differs from Morris *v.* Stephens, 10 Wright 200, because in that case there were no other words but "*heirs*," here

is the additional word " grandchildren," showing what the grantor meant by " *heirs*."

Where the term " heirs" is used in a deed as descriptive of the *persons* to take, and not of the course of descent or quantity of estate, the rules of construction in a deed and will are the same. In the case of a will, the question has been decided in Doe d. Winter *v.* Perratt, 10 Bing. 207, 208, 209 ; 7 Scott, N. R. 45, 46 ; Id. '26 ; Id. 60, 61, s. c. 5 B. & C. 48 ; Right *v.* Creber, 5 B. & C. 866. That the term " heirs" shall be read to mean children : Broom's Legal Maxims 224 ; Sheppard *v.* Nabers, 6 Ala. 631 ; Donald *v.* Dendy, 2 McMullen 123 ; Lockwood *v.* Jessup, 9 Conn. Rep. 272.

The children here are claiming not as *heirs* of the son, but as *children* of the son described by the word " *heirs*." It is settled that what occurs at and immediately before the execution of an instrument may be proved by parol, to conform it to the intent of the parties : Rearick *v.* Swinehart, 1 Jones 238 ; Hurst *v.* Kirkbride (cited in Wallace *v.* Baker), 1 Binn. 616 ; Renshaw *v.* Gans, 7 Barr 117 ; Chalfant *v.* Williams, 11 Wright 212 ; Means *v.* Presbyterian Church, 3 W. & S. 803 ; Hollingsworth *v.* Fry, 4 Dallas 347 ; Hagan *v.* Delaware Ins. Co., 1 W. C. C. R. 419. Suppose the father had agreed with his son's children by parol to execute a deed to them, and believing that the word " *heirs*" would carry out his intent, used that word, would not proof of the agreement be allowed to correct the mistake ? The plaintiffs are volunteers and stand in the same condition A. Lantz, Sr., would have stood: could he have overthrown his own act ? The rule, on the maxim *nemo est hæres viventis*, that the conveyance to the " heirs" of the son, he being living, is void, is a mere rule of construction ; and as he has only used inapt words, his intent should be carried out notwithstanding. When there may be two meanings to words, that which will effectuate the intention should be adopted : Bagshaw *v.* Spencer, 1 Ves. 147 ; Archer's Case, 1 Co. 66 ; Lisle *v.* Gray, 2 Lev. 233, Sir T. Raym. 315. There is no reason to construe " heirs" differently in a deed and a will, though there may be greater latitude in the latter as to proof of external circumstances : Brooking *v.* White, 2 W. Bl. 1010 ; James *v.* Richardson, 2 Jones 99 ; Burchett *v.* Durdant, Carthew 154 ; Prec. in Ch. 461 ; 2 Dane's Abr. 515 ; Long *v.* Beaumont, Fortescue 18 ; 1 P. Wms. 229 ; 1 Bro. P. C. 489 ; Brown *v.* Barkham, Prec. in Ch. 461 ; 1 Strange R. 41 ; Long *v.* Lamming, 2 Burr. 1100 (citing at 1107, Allgood *v.* Withers, in Chancery, also at 1113, Walker *v.* Snowe, Palm. 359) ; Doe *v.* Perratt, 5 B. & C. 48 ; Broom's Leg. Max. 395. The maxim applies only to devises or remainders after a previous freehold or to things lying in grant, and to a conveyance *in præsenti* of a corporeal hereditament which passed by feoffment and livery : 4 Kent's Com. 448 ;

[Huss *v.* Stephens.]

Perkins 120, 182 ;· for where livery is made the person is designated and there can be no uncertainty : Perkins 42. Under our laws a deed acknowledged and recorded is of the same force with livery in England : Sprague *v.* Woods, 4 W. & S. 192. Because one was incapable of taking, even if it was the intent that all the children the son might have should take, this shall not prevent those who were capable from taking : Perk. 192–204 ; 8 Bro. 404. Morris *v.* Stephens was decided on authority of Hall *v.* Leonard, 1 Pick. 27. The judge in that case cites Perkins, who is speaking of incorporeal hereditaments which lie in grant, and is therefore no authority for saying that a deed for a corporeal hereditament, which requires immediate delivery, is void.

The deed here is different from the former case, and may be considered a bargain and sale or covenant to stand seised : 4 Cruise's Dig., ch. 10, pl. 12–34 ; Lord Say and Seal's Case, 10 Mod. 40 ; 4 Bro. P. C. 73. In bargain and sale and in covenant to stand seised, the possession remains in the party and the statute executes it in the *cestui que use:* Co. Litt. 271, Butler's note 231.

*Wyly* and *Buchanan,* for defendants in error.—This case is substantially ruled by Morris *v.* Stephens. Does the difference in the language vary the effect ? The first is " for the love and affection the grantor has for said *heirs ;*" this, " for the love and affection the grantor has for his *grandchildren.*"

In reading the deeds together without parol testimony, it cannot be said the grantor meant *children,* not *heirs ;* title to land should not rest on conjecture. A grantor is presumed to use a legal term in its legal sense : Porter's Appeal, 9 Wright 207 ; Creswell's Appeal, 5 Id. 290 ; Guthrie's Appeal, 1 Id. (citing Perrin *v.* Blake). The intent that words are to be construed differently from their legal sense must be unequivocal. " Heirs," as used in this deed, could not be construed " children" if used in a will, and there the construction is more liberal : Ellmaker *v.* Ellmaker, 4 Watts 89 ; Hileman *v.* Bouslaugh, 1 Harris 344 ; Auman *v.* Auman, 9 Id. 343.

Where words have a known legal meaning, evidence is not admissible to show that the parties intended to use them in a different sense : 3 Stark. Ev. 1038 ; Brown *v.* Nickle, 6 Barr 391 ; Fox *v.* Foster, 4 Id. 119.

But the deed is void for uncertainty, as it was to the *heirs* of a living man : Hall *v.* Leonard, 1 Pick. 27 ; Morris *v.* Stephens, 10 Wright 200.

The opinion of the court was delivered, January 23d 1866, by

WOODWARD, C. J.—Andrew Lantz, Sr., on the 6th day of June 1853, made two deeds for separate parcels of real estate,

and in both deeds described the grantees as *heirs* of Andrew Lantz, Jr., a son of the grantor then in full life. In one of the deeds the consideration expressed was one dollar in money and "the natural love and affection which the grantor hath for said heirs," and we held in Morris *v.* Stephens, 10 Wright 200, that the deed was void for uncertainty; and we refused to receive parol testimony that the grantor meant his son Andrew's children then born and to be born.

In the other of these deeds, being the one now before us, the grantees are described in the same manner, but the consideration expressed is a dollar and the "natural love and affection he hath for his *grandchildren.*" On the trial of this cause, as on the former, parol evidence was offered and rejected to explain the intention of the grantor, and it was admitted that Andrew Lantz, Jr., was living at the date of the deed; that he died June 13th 1862; that at the date of the deed he had four children living, viz., the defendants in this suit; and that the grantor knew that his son and these grandchildren were living when he made the deed. It was also admitted that a daughter was born to Andrew Lantz, Jr., after the date of the deed.

These are the circumstances under which two questions are presented for decision: 1st, whether this case is distinguishable from the former; and 2d, if it is, whether this deed can take effect.

We think the cases are distinguishable. In the deed in the former case there was nothing but the word heirs to individuate the grantees. It was impossible to say that the grandchildren would be the heirs of a living son. Andrew Lantz, Jr., might have survived all his children and left no heirs except collaterals. *Nemo hæres est viventis.* In popular language children are often called heirs, but the legal rule of construction, as applied in many cases to written instruments, is that the word "heirs" is to be accepted in its technical or artistic sense, unless there be something in the context to interpret it differently. In the former case there was nothing in the context to control the legal meaning of the word, but here is the word "grandchildren" standing in such a relation to the word heirs that it may be legitimately drawn into the construction. In this respect, therefore, the deeds are plainly distinguishable.

Then, in the next place, do these words sufficiently indicate the grantees to give the deed effect? If it were a will instead of a deed that we were to construe, and these words stood in a similar relation, we would not hesitate to read heirs as meaning grandchildren. Innumerable cases, which may be found collected in Jarman or any of the compilers, would justify this mode of effectuating the intent of the instrument, but a stricter rule of construction is applied to deeds than wills will bear. Still, however, it is

true of deeds that the intent of the grantor, when legal, is a governing principle in the construction of his deed: Means *v.* The Presbyterian Church, 3 W. & S. 303.

As long ago as 1800 it was declared in Hollingsworth *v.* Fry, 4 Dallas 347, that the great rule of interpretation, with respect to deeds and contracts, is to put such a construction upon them as will effectuate the intention of the parties, if such intention be consistent with the principles of law. That this rule is just as applicable to the word " heirs" as to any other part of the deed, is proved by the observations of Lord Hardwicke in Bagshaw *v.* Spencer, 1 Ves. 147, where, in speaking of the distinction established in Shelly's Case between this word as a word of limitation and a word of purchase, he says: " Even in the case of a deed, in construing which the same latitude is not allowed as in wills, they were taken as words of purchase to *serve the intent,* in Lisle *v.* Gray, Lord Raym. 315, and 2 Lev. 233. To this," added his lordship, " it was said there were several other words in that case, which I allow; but still it is an authority that they may at law, and upon a deed, be construed as words of purchase if the intent requires it. The other words are only a sign of the intent; and it is an unanswerable argument, that if some words showing the intent may turn it into a word of purchase, others may, there being no magic in any particular words."

I have looked at the case of Lisle *v.* Gray in Levinz, and the other words alluded to were " and so to all and every the heirs male of the body of Edward." These words occurred after limiting an estate to Edward and his four sons, and the question was whether by these words Edward took an estate tail or whether he was only tenant for life, and the words " and so to all and every the heirs male of the body of Edward," shall be taken as if it had been to all and every other sons of Edward. The court held that Edward had only an estate for life by the manifest intent of the conveyance, " which ought to be pursued where by any means it can," and so they gave judgment for the plaintiff.

This case was cited with approbation by Lord Mansfield in Long *v.* Lamming, 2 Burr. 1100, where upon a devise to A. and the heirs of her body and to their heirs and assigns, he held that heirs of the body were descriptive of children and they took as purchasers. So in a devise to the right heirs of husband and wife, it was held in Nightingale *v.* Quartley, 1 T. R. 630, to be a devise to a child of both, and if no preceding estate be given to the father and mother, such child shall take as a purchaser. See also Archer's Case, 1 Coke's R. 163.

Now, when in this deed the grant is to the heirs of a son and to their heirs and assigns for ever, and the other word " grandchildren" comes in as a *designatio personarum*—as the grantor's definition of what he means by heirs—where is there room to

[Huss *v.* Stephens.]

doubt, either upon reason or authority, that we ought to construe heirs a word of purchase, meaning the grandchildren, and thus serve the intent? It is an instance where the context of the instrument proves that the word heirs is to be taken in its popular and not its technical sense. Acknowledging the consideration of the instrument to be love and affection for his grandchildren, he intended, by that sure token, that they should take an estate from him. Had he named them he could scarcely have been better understood.

The reliance of the court below and of this court on the former occasion, was upon the case of Hall *v.* Leonard, 1 Pick. 27, a case which in its turn was rested upon what is laid down in Perkins, § 52, that a grant to the heirs of a person in being is void, as there are no persons *in esse* who can take under that description. If the learned judge of the Supreme Court of Massachusetts had noticed that this rule from Perkins was predicated of incorporeal interests, which only lie in grant and are not susceptible of livery, he would not have misled us into applying it to a conveyance of land here in Pennsylvania, where registry stands instead of livery. Defining the word heirs in this deed as the grantor defined it, to mean grandchildren, there were persons *in esse* to take under that description, so that the final reason upon which the judgment in Hall *v.* Leonard rests, fails in this case. Besides, there were not in that case " other words" to be a sign of the grantor's intent, as there are here. We think, therefore, that if we followed that case properly on the former occasion, it would be a mistake to follow it in this instance.

We do not touch the question of evidence, both because it was well decided in the other case and because, upon our interpretation of the present deed, it does not arise.

The judgment is reversed, and a *venire facias de novo* is awarded.