## Criswell et al. *versus* Grumbling et al.

1. A., the owner of a certain farm, entered into the following agreement with B. and C., his son-in-law and daughter: " . . . . . Said A. . . . . . agrees to give his farm unto the said B. and C., his wife, to farm during his natural lifetime, for the consideration of keeping him comfortable in food and clothing and necessaries. Said A. further agrees that after his decease said B. and C., his wife, shall have said farm for their use during their lifetime, and after their decease to go to their heirs after them forever, provided said C. will leave any children, otherwise the farm to go to the nearest relatives of said A. . . . . Said B. and C., his wife, agree to fulfil the foregoing conditions, and also agree not to transfer or sell their right of afore-mentioned farm to any person whomsoever; for be it understood that said A. grants no power to sell or transfer the privilege of these presents to any other than the within named B. and his wife." After the death of A. and C., B. conveyed the farm in fee to D., whereupon the children of C., during B.'s lifetime, brought ejectment.

*Held*, that they were properly non-suited by the court below. The first part of the agreement amounted to a lease of the farm during the life of A., and the condition restrained a sale during that period, but did not prohibit a sale of the life estate which began at the death of A.

2. C. being dead when the conveyance was made, her rights had vested in B., and his deed was as effectual to convey the life estate as a joint deed in her lifetime would have been.

3. Even technical words of limitation found in an executed conveyance may be so qualified by the context as to make them conform to the intention of the grantor.

4. While the words, " and after their decease to go to their heirs after them forever," following the life estate, standing alone would have vested a fee in B. and C., yet this clause was so qualified by the following one, to wit: " provided said C. will leave any children," as to show

that A. really used the word "heirs" in the sense of "children." *Held*, therefore, that B. and C. only took a life estate; and his conveyance in fee passed only the estate which he had.

October 22d, 1884.   Before MERCUR. C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ.  PAXSON, J., absent. CLARK. J., did not sit.

ERROR to the Court of Common Pleas of *Indiana county :* Of October Term, 1884, No. 147.

Ejectment. by Mary Criswell and four others, against Emanuel H. Grumbling and ten others, to recover two adjoining tracts of land in Green township, Indiana county.

At the trial, before BLAIR, P. J., the evidence on behalf of plaintiffs showed the following facts :—

In 1837 the title to the land in dispute was vested in Robert Evans.  The premises were occupied by Evans and his daughter Ann, with her husband, Howell H. Jeffries, and their children.   While so occupied. on September 27th, 1855, the following agreement was entered into between the parties:

". . . . . That said Robert Evans of first part agrees to give his farm unto the said Howell H. Jeffries and Ann, his wife, to farm during his natural lifetime, for the consideration of keeping him comfortable in food and clothing and necessaries.

" Said Robert Evans further agrees that after his decease said Howell H. Jeffries and Ann, his wife, shall have said farm for their use during their lifetime, and after their decease to go to their heirs after them forever, provided said Ann Jeffries will leave any children, otherwise the farm is to go to the nearest relations of said Robert Evans. . . . . . Said Howell H. Jeffries and Ann, his wife, agree to fulfil the foregoing conditions, and also agree not to transfer or sell their right of aforementioned farm to any person whomsoever.  For, be it understood, that said Robert Evans grants no power to sell or transfer the privilege of these presents to any other than the within named Howell H. Jeffries and Ann, his wife, for the performance of these presents.

"(Signed)   ROBERT EVANS, HOWELL H. JEFFRIES, ANN JEFFRIES."

Robert Evans died in 1861, and his daughter Ann in April, 1869, leaving her husband and children (plaintiffs in this suit), to survive her.

After the death of his wife Ann, to wit : on September 8th, 1869, and again on April 11th, 1873, his second wife, Rachel, joining in the deed, Howell Jeffries conveyed said land to

Emanuel A. Grumbling, one of the defendants, and Grumbling, by several deeds, conveyed to the other defendants.

Plaintiffs contended that under the said agreement, which was recorded when Grumbling purchased, Howell Jeffries and Ann, his wife, had a life estate, which was to commence at the death of Robert Evans, and continue during the life of Jeffries and his wife, and the survivor of them, with a vested remainder in fee in the children of Ann, which opened to let in children born after the execution of the agreement.

That by the provisions of said agreement the sale of said life interest was prohibited. That the conveyances made by Howell Jeffries were in violation of such prohibition, and a breach of the condition annexed to his life estate, working a forfeiture thereof.

Plaintiffs were heirs of Robert Evans, and therefore entitled to the remainder in fee under the agreement.

Howell Jeffries was living when suit was brought.

At the close of plaintiffs' evidence the court granted a compulsory non-suit, which it subsequently refused to take off, BLAIR, J., delivering the opinion, which was, inter alia, as follows:

" The plaintiffs' right to recover is based upon the position that, under the contract above mentioned, a life estate only was secured to Jeffries and his wife, and that this estate was forfeited when the surviving husband undertook to sell, and did sell and convey the land in dispute, in violation of that provision of the contract prohibiting alienation. It is plain, however, from the reading of this paper, that the prohibitory clause cannot have the effect attributed to it. What Robert Evans desired was to have a home with his daughter and son-in-law, and he therefore bargained with them that they should keep him comfortably during his life. It occurred to him that they might sell the land in his lifetime, or such interest in it as they might have, and thus turn him over to the keeping of strangers. He guarded himself against accident of this kind, because he wanted the personal service and attention of those with whom he was bargaining so long as he lived. This was the whole purpose of the provision, and it cannot, therefore, be rationally and fairly construed into an absolute prohibition against alienation after his death. This is sufficient to dispose of the case, for if we should concede (which we do not) that Jeffries and his wife took only a life estate, the fact that the husband is still living would prevent a recovery. So long as he lives his children can have no legal claim to the possession under the contract. When a tenant for life conveys a greater estate than he holds, the conveyance

[Criswell et al. v. Grumbling et al.]

does not work a forfeiture, but is effectual to pass such estate as he has."

Whereupon the plaintiffs took this writ of error, assigning for error the entry of the non-suit and refusal to take it off.

*A. Israel* (with whom were *Josiah Cohen* and *J. N. Banks*), for plaintiffs in error.—A condition may be annexed to a life estate prohibiting alienation : Turner *v.* Fowler, 10 Watts 328. The violation of such condition works a forfeiture : Sheaffer *v.* Sheaffer, 37 Pa. St. 525 ; Hamilton *v.* Elliott, 5 S. & R. 375. The clause of this agreement forbidding alienation clearly referred to the estate of Jeffries and wife, after Evans's death as well as before. Evans's intention was not only to provide for himself but to make a permanent home for his grandchildren which could not be sold by their father. The conveyances by Jeffries being in violation of the condition against alienation, worked a forfeiture. It is evident from the context that the word " heirs " in the agreement was used by Evans in its popular sense of " children." An estate for life to A. and B., and after their decease to their children, gives only a life estate to the first takers, and a remainder in fee to the children : Gernet *v.* Lynn, 31 Pa. St. 94 ; Miller *v.* Lynn, 7 Id. 443 ; Huber's Appeal, 80 Id. 348 ; Urich *v.* Merkel, 81 Id. 332 ; Hileman *v.* Bouslaugh, 13 Id. 344, in which the word heirs is deemed a term of art which cannot be controlled by the context, was overruled in Huss *v.* Stephens, 51 Pa. St. 282.

*Wm. M. Stewart, Jr.*, and *H. W. Weir* (with whom were *Wm. M. Stewart* and *Harry White*), for defendants in error.—In order to sustain the plaintiffs' position it must be conclusively shown that this clause in restraint of alienation referred to or had any effect upon the estate granted to Howell and Ann Jeffries, for otherwise the plaintiffs have no present right of possession and cannot therefore maintain ejectment : Tyler on Ejectment, page 76 ; Alden *v.* Grove, 18 Pa. St. 377 ; Cheney *v.* Cheney, 26 Vt. 606. The court below found that the restraint of alienation applied to the privilege granted to Jeffries and his wife to farm the property during Evans's lifetime, which is the most reasonable construction of the agreement. But even if it should be granted that the restraint refers to the estate, and that the estate is for life only, we still contend that the plaintiffs have no present right of action. " A provision in a deed or a will that a life tenant shall not alienate or anticipate—that is, not that he and his assigns shall lose the estate upon alienation but that he shall be compelled to keep it, so that neither his grantees nor any third person can get hold of it or enjoy it—is void : Gray's Re-

straints on Alienation, page 86; Rochford *v.* Hackman, 9 Hare 475; Brandon *v.* Robinson, 18 Vesey 429; McCleary *v.* Ellis, 54 Iowa 311; Bridge *v.* Ward, 35 Wis. 687; 2 Redfield on Wills 289.

In a deed the word heirs has but one meaning; it is a term of art, and cannot be controlled by the context: Hileman *v.* Bouslaugh, 1 Harris 344; Auman *v.* Auman, 9 Id. 343; Ellmaker *v.* Ellmaker, 4 Watts 89. The word "children" in the clause "provided said Ann Jeffries will leave any children," if it has any meaning, is used in the sense of "issue." Haldeman *v.* Haldeman, 4 Wr. 29; Voller *v.* Carter, 4 Ellis & Bl. 173; Broadhurst *v.* Morris, 2 B. & Ad. 1; Jones *v.* Davies, 4 Id. 43.

Mr. Justice GORDON delivered the opinion of the court, January 5th, 1885.

The fee to the land in dispute was, on the 27th of September, 1855, in Robert Evans, who has since deceased, and under and from whom, as children of his daughter Ann, intermarried with Howell H. Jeffries, the plaintiffs claim title. On the other hand the defendants claim under the said Howell H. Jeffries, to whom, with his wife Ann, at the date above mentioned, Robert Evans executed the agreement or conveyance, the construction of which gives rise to the present contention. Jeffries is still alive, but his wife, Ann, is now dead, and was so at the commencement of this suit, so that the question turns upon the title of Jeffries and his vendees, the defendants. The court below holding that there was, by the conveyance above referred to, a life estate in the said Jeffries which he was at liberty to convey, non-suited the plaintiffs. We think that in this there was no error. The agreement of the 27th of September is, on the point in controversy, i. e., the right of Jeffries to sell his life estate, somewhat obscure, but we do not see that we can make a better construction of it than did the learned Judge of the Common Pleas. Those parts of the agreement material to this controversy are as follows: "That said Robert Evans of the first part agrees to give his farm unto the said Howell H. Jeffries and Ann, his wife, to farm during his natural lifetime, for the consideration of keeping him comfortably in food and clothing and necessaries. Said Robert Evans further agrees that after his decease said Howell H. Jeffries and Ann, his wife, shall have said farm for their use during their lifetime, and after their decease to go to their heirs after them forever, provided said Ann Jeffries will leave any children, otherwise the farm is to go to the nearest relations of said Robert Evans. Said Howell H. Jeffries and Ann, his wife, agree to fulfil the foregoing conditions, and also

agree not to transfer or sell their right of aforementioned farm to any person whomsoever. For be it understood, that said Robert Evans grants no power to sell or transfer the privilege of these presents to any other than the within named Howell H. Jeffries and Ann, his wife."

This agreement, as construed in the court below, and as we also are inclined to construe it, does not involve the question of forfeiture for a breach of the condition in restraint of sale. Had Jeffries and his wife attempted a sale of the premises during the lifetime of Robert Evans, the question as above stated would have been pertinent and material, but as nothing of the kind was done until after the death of Robert Evans, and of Ann, his daughter, this subject, under the construction which we have adopted, requires no discussion.

The first part of the agreement amounts to a mere lease of the farm during the life of Evans, and the condition, for obvious reasons, restrains a sale of this right during that period, but we cannot see that it prohibits the sale of the superadded life estate which commenced at the death of the grantor. The very contrary seems, in a blind way, to be indicated in the latter part of the condition : " For be it understood, that said Robert Evans grants no power to sell or transfer the privilege of these presents to any other than the within named Howell H. Jeffries and Ann, his wife." This would seem to indicate that he intended to grant a power of sale to Jeffries and his wife jointly, and as the first clause of the condition seems to exclude such power as to the right granted during the life of Evans, it must apply to the life estate. It is true that he may have intended that such sale should be made only by the joint conveyance of the husband and wife, but as the wife was dead at the time of the conveyance to Grumbling, her rights had then vested in him, and his deed was as effectual to convey the title as would have been a joint deed executed in her lifetime : McCurdy & Stevenson v. Canning, 14 P. F. S. 39.

We agree, however, with the counsel for the plaintiff in error, that no greater estate than for the life of Howell H. Jeffries is vested in the defendants. He had no greater estate to convey, for by the conveyance of Evans the fee was vested in the children of Ann Jeffries.

Standing alone, of course the words, " and after their decease to go to their heirs after them forever," would put a fee in the grantees, but the immediate context so qualifies the word " heirs " as to show that the grantor really meant children. " Provided said Ann Jeffries will leave any children, otherwise the farm is to go to the nearest relations of the said Robert Evans." Here is so clear a definition of the intention

of the grantor that it cannot be overlooked, and it must control the preceding expression. It was urged that the word "heirs" in a deed is a term of art, and cannot be controlled by the context, and in support of this Hileman *v.* Bouslaugh, 1 Har. 344, has been cited. But in Huss *v.* Stephens, 1 P. F. S. 282, the contrary doctrine was announced, and in the recent case of Mergenthaler's Appeal, 15 W. N. C. 441 this court held as follows: "In Huss *v.* Stephens, 1 P. F. S. 282, it was held, that in deeds as in wills the intent of the grantor is to be taken as the cardinal rule for their construction, and though Hileman *v.* Bouslaugh, 1 Har. 344, would seem to support a different doctrine, yet it may now be regarded as settled that even technical words of limitation, found in an executed conveyance, may be so qualified by the context as to make them conform to the intention of the grantor." As, however, the life estate was sufficient to support the ruling of the court below, its judgment must be affirmed.

The judgment of the court below is now affirmed.