French's Estate.

224

Argued April 23, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Robert F. Irwin, Jr.,* of *Donahue, Irwin, Merritt & Gest,* with him *Frank Rogers Donahue* and *John B. Gest,* for appellees.—One surviving child constitutes "a majority of my children then living" and her direction to dissolve the trust effects the termination thereof.

The trust being terminated as to three-fourths of the estate, the principal of the entire estate should be awarded, one-fourth to remain in trust for the children of the son for whom the trust continues, one-fourth to the surviving child, and one-fourth each to the personal representatives of testator's other deceased children: Leech's Est., 1 Pa. D. & C. R. 352.

OPINION BY MR. JUSTICE WALLING, September 29, 1930:

In 1895, Samuel H. French, of Philadelphia, died testate. He left two sons, Howard B. French, Emmor D. French and two daughters, Mrs. Clara Angelina French Jakob and Miss Mary Harriet French. He was also sur-

vived by several grandchildren and one, Gnade Jakob, born thereafter, is still living. The testator left a large estate which he disposed of in an elaborate and complicated will, comprising twenty-seven paragraphs. Those numbered from one to eleven inclusive, contain minor legacies, etc., and paragraph twelve gives the balance of his entire estate to trustees, directing annual payments to his daughters from the net income. Paragraph thirteen authorizes the trustees to sell any or all of his real estate, etc. Paragraphs fifteen and sixteen provide, inter alia, for the payment of all surplus income to his four children and create separate use trusts for life in their favor.

Paragraph seventeen provides, inter alia, "Should the majority of my children then living at any time think it best to have the trust, established by this will, dissolved they can do so by their written direction and consent addressed to the trustees of my estate for that purpose"; with the further order that the share of the son, Emmor D., should remain in an absolute trust for him and his children. Paragraph twenty provides that upon the death of all his children the surviving trustee or trustees shall place the estate under the control of an established trust company in Philadelphia, to be held for the benefit of his grandchildren or their legal issue.

Paragraph twenty-two provides, inter alia, "I order and direct that the trust hereby established, shall be kept in force until the decease of all my grandchildren now living—after which the corpus or principal of my estate shall be divided among the legitimate heirs of my grandchildren in such proportion as my children would be entitled to were they living." Paragraph twenty-five is hereinafter quoted. Paragraph twenty-six appoints his son, Howard B. and two of testator's friends executors and trustees under the will, and provides for the filling of vacancies in the board of trustees, by virtue of which the Fidelity-Philadelphia Trust Company ultimately became and is the trustee. The daughter, Mrs.

Jakob, died in 1901, the son Emmor D. in 1904, and the son Howard B. in 1924. The unmarried daughter, Mary Harriet French, is the sole surviving child and as such she gave the trustee a written notice, as follows:

"July, 3, 1929.

Fidelity-Philadelphia Trust Company,
Succeeding Trustee under the last will and testament of Samuel H. French, Deceased,
135 South Broad Street, Philadelphia, Pa.
Gentlemen:

"Under the 17th paragraph of the will of Samuel H. French, deceased, I direct and consent to the dissolution of the trust established by the will.

"Very truly yours,

"[signed] Mary H. French."

When the matter came before the auditing judge he declared the trust at an end, except as to the share of the son Emmor D., and ordered that the trust fund, amounting to approximately $425,000, be divided into four equal shares; that of Emmor D., to remain in trust for the benefit of his children, one share to be paid to the daughter, Mary Harriet, and one share each to be paid to the legal representatives of the son Howard B., and of the daughter, Mrs. Jakob. Exceptions filed to this adjudication were dismissed by the orphans' court and a final decree of distribution made according to the nisi adjudication. Therefrom, parties in interest brought these six separate appeals, all raising the same questions.

Construing, as we must, the will as an entirety and so as to give effect to all of its provisions (Biles et al. v. Biles, 281 Pa. 565), the right given the children in paragraph seventeen to end the trust continued in them notwithstanding other provisions of the will. The words "the majority of my children then living" clearly signify the majority living when the action is taken to dissolve the trust. See Leech's Est., 274 Pa. 369. By no reasonable construction can they be made to refer to any other

time. The question is, Can the power to dissolve the trust be exercised by an only surviving child? We agree with the orphans' court that it can. The will makes no limitation as to the number who must be living when such action is taken. If one is not a majority of one then two, although acting as a unit, would not be a majority of the two and one vote would not be a majority if only one was cast. Mary Harriet French is not only a majority but all of testator's surviving children. The word "they" is, of course, applicable to one, as well as to a plurality. Paragraph twenty-five of the will provides: "I order and direct that no inventory whatever of my estate shall be filed and that my trustees hereinafter nominated and appointed by this my last will shall not be required to file any account of their trust except on the petition of the majority of my children then living. After the death of all my children, accounts must be regularly filed." It cannot be that the testator intended that his last surviving child or children, when two, would be powerless to require the trustees to file an account.

The trust being dissolved, the final question is as to the proper disposition of the corpus of the estate. This the auditing judge and orphans' court properly gave to testator's four children in equal shares, as above stated. It is reasonably clear that the legacies to the great-grandchildren fell with the trust. Several grandchildren, born before testator's death, are living and until the death of the last survivor it would be impossible to determine who will be their legitimate heirs. The trust being ended, the estate is presently distributable; but as the grandchildren are alive, who will finally be their legitimate heirs cannot now be known, as no one is heir to the living; hence, the estate cannot pass to great-grandchildren. To do so would deprive the children and grandchildren, who were the first objects of testator's bounty, of their interest therein. The trust being ended by authority in the will, there is no warrant for the crea-

tion of a new one to carry out the original purpose. The distribution made by the orphans' court was based on provisions of the will which, so far as they refer to distribution, call for an equal division among the children. Moreover, if any part of the estate is not covered by these provisions, it so passes under the intestate laws. It must be kept in mind that an heir cannot be disinherited except by plain words or necessary implication.

The decree is affirmed and appeals are dismissed; costs to be paid out of the fund for distribution.