# John W. Waits *v.* T. S. Bailey, A. G. Hoovler, W. A. Egbert and M. L. Kelly, Appellants.

*Ejectment—Title—Mortgage.*

In an action of ejectment it appeared that an owner of a tract of seventy-five acres of land permitted a school board to use one-half acre of it for school purposes. The school district never claimed the title to this half acre, and in subsequently selling the school building which it had erected thereon, it expressly restricted the sale to the building itself. The purchaser did not remove the building, and the defendants were in possession of it and the half acre under the purchaser. Before the school district had sold the building and abandoned the lot for school purposes, the grantees of the former owner of the seventy-five acres executed a mortgage of all their right, title and interest in the tract, " the said right being the fee simple in

all the coal and other minerals contained therein. . . . Together with all and singular the . . . . reversions and remainders thereof." Plaintiff claimed under the purchasers at a sheriff's sale under the mortgage. After the sheriff's sale the mortgagors never claimed any interest in the half acre lot. *Held*, that the plaintiff was entitled to recover the half acre lot without any restriction.

Argued Oct. 26, 1898.   Appeal, No. 176, Oct. T., 1898, by defendants, from judgment of C. P. Venango Co., April T., 1897, No. 13, on verdict for plaintiff.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Ejectment for a half acre of land in Mineral township.   Before CRISSWELL, P. J.

At the trial it appeared that the half acre lot in controversy was a portion of a seventy-five acre tract owned in 1853 by Joseph Simcox.   By permission of said Simcox, in that year, the school district fenced it, erected a schoolhouse thereon and occupied it for school purposes until 1878.   In 1869, Simcox died intestate, and his title to the seventy-five acres, by various conveyances from his heirs, became vested in D. B. Irwin, and he with another, by instrument dated July 22, 1871, mortgaged to S. P. McCalmont all their "right, title, interest and claim, . . . . said right being the fee simple in all the coal and other minerals contained therein, of, in, to or out of all that certain tract of land. . . . Together with all and singular the . . . . reversions and remainders thereof."   Upon foreclosure, the land was sold by the sheriff, and Samuel Plumer, under whom plaintiff claims, became the purchaser.   In 1878, the school board sold the schoolhouse, the sale being expressly restricted to the building itself.   The purchaser did not remove it and the defendants were in possession under him.

The court charged in part as follows:
[The rule in the construction of deeds is that they shall be construed most strongly against the grantor.] [1]   The mortgage in this case grants "all the right, title, interest and claim of the parties of the first part," and then, parenthetically, there is inserted these words, "said right being the fee simple in all the coal and other minerals contained therein, of, in, to or out of all that certain tract of land," etc., the mortgage then describ-

ing the larger tract, which includes the half acre in controversy. The subsequent language in the mortgage is that ordinarily used in a mortgage of real estate, " together with all and singular the buildings and improvements, streets, lanes, alleys, passages, ways, water-courses, rights," etc. [We incline to the opinion that the mortgage covered all the interest of the mortgagors in the property, that is, in the lot in question; that it not only covered the coal right, or title to the coal and other minerals, but that, so far as this half acre is concerned, it covered all the interest of the mortgagors therein.] [2] We are further of the opinion that under the evidence here it clearly appears that both parties claim under Joseph Simcox, that he is the common source of title. Where it appears that there is a common source of title, and both parties are claiming from the same person, it is not necessary to show title out of the commonwealth. The defendants, while not showing title, have shown by the deeds which have been offered in evidence for that purpose that they entered there under a claim of title. We say this, being of the opinion that the holding of the school district of this lot, the use of the premises for school purposes, was not adverse to the rights of Joseph Simcox. There is no evidence of any conveyance by Joseph Simcox to the school district, and in view of the authorities presented, and our own conclusions in reference to it, we are of the opinion that their holding was not adverse to Joseph Simcox, but rather that the presumption, if there is any presumption, would be that they entered there under the statute for school purposes only, and not under any claim of title. It would require evidence tending to establish the fact that they were there in possession, adversely claiming to own the title to the land, in order to furnish a basis for title in the defendants. If they were simply there claiming to occupy the land for school purposes, that would not be adverse to the rights of Joseph Simcox. If the holding by the school district was not adverse, then those who occupied the land since that time have not occupied it for twenty-one years, and therefore their possession would not furnish any basis for a claim under the statute of limitations, that is, an adverse possession of twenty-one years.

[Having concluded, therefore, that the mortgage covers all the interest of the grantors therein, and that their interest

passed by the mortgage and foreclosure thereof to Samuel Plumer, and from Samuel Plumer, under the evidence, to the plaintiff, Mr. Waits, and the defendants not having shown any title in themselves, we are of the opinion that the verdict should be for the plaintiff for the land described in the writ, and we so instruct you.] [3]

The jury found for the plaintiff the land described in the writ.

On a rule for a new trial the court filed the following opinion :

The court having given the jury binding instructions to find for the plaintiff for the land described in the writ, it is now urged on behalf of the defendants that the court erred, first, in not submitting to the jury the question whether or not Simcox had such possession of the land as would in law furnish a basis for an action to recover possession thereof ; secondly, that the court erred in its construction of the mortgage to McCalmont and the deed made in pursuance thereof under which the plaintiff claims title.

As to the first reason we deem it sufficient to say that the evidence shows Simcox to be the common source of title, and such being the case the fact and character of his possession were not in dispute, and there was, therefore, nothing in relation thereto to submit to the jury. The second reason involves a proposition of much more difficulty. By the terms of the mortgage there was granted to the mortgagee " all the right, title, interest and claim of the parties of the first part; said right being the fee simple in all the coal and other minerals contained therein, of, in, to or out of all that certain tract of land," etc., describing a tract which includes the lot in controversy. As shown by the evidence, the mortgagors had, prior to the making of the mortgage mentioned, conveyed the whole larger tract, except the school lot in question, reserving the coal thereunder, to Ross Robinson in fee, so that at the time of making the mortgage the mortgagors owned only the reversionary interest in the school lot and the coal under the balance of the tract. In view of this fact it is argued on behalf of the defendants that the mortgagors intended only to convey the coal or mineral

right reserved añd then owned by them, and that only such interest was acquired by the purchaser at the mortgage sale.

At the trial the court ruled that under the evidence the possession of the school district was not hostile to the owner of the fee.    On the argument of this rule there was practically no contention as to the correctness of the ruling indicated. Assuming it to have been correct, and that the contention of the defendants now as to the construction of the mortgage is correct, the mortgagors did not by their mortgage convey to McCalmont all their " right, title, interest and claim," in the larger tract, but still retained the school lot not embraced in either the prior conveyance to Robinson nor, except as to the coal thereunder, in the mortgage.    It is true that the general words in the habendum of a deed cannot enlarge the particular estate described in the premises thereof, yet the whole consists of all its parts, and all are to be construed together as one instrument. . " The object of all constructions is to ascertain the intent of the parties, and it must have been their intent to have had some meaning in every part.    It never could be a man's intent to contradict himself ; therefore, we should lean to such a construction as reconciles the different parts and reject a construction which leads to a contradiction : " Wager v. Wager, 1 S. & R. 374.    The general words, however, chiefly relied upon by the plaintiff are not found in the habendum, but in the premises of the mortgage.    Omitting the parenthetical words relied upon by the defendants, the particular estate described in the premises is " all the right, title, interest and claim of the parties of the first part of, in, to or out of all that certain tract of land," etc.    Do the parenthetical words, " said right being the fee simple in all the coal and other minerals contained therein," inserted after the words " parties of the first part," qualify and limit the scope of the preceding words and render the estate conveyed less than all the " right, title, interest and claim " of the parties of the first part?

The case most nearly in point to which our attention has been called is that of Miner's Appeal, 61 Pa. 283, wherein very similar explanatory words were held not to qualify the preceding general words.    The words, " the said right being," in the mortgage under consideration, are not more specific, and do not refer more directly to the preceding general words, than the

words, "and being," in the instrument construed in Miner's Appeal. The deed from Irwin and wife to Robinson offered by the defendants shows that the grantor excepted from the grant the one half acre occupied as a school lot. There was, therefore, an estate and interest in the mortgagors, in addition to the coal, upon which the general words of the grant could operate. In view of this fact is it not fair to assume and conclude from the language used that the mortgagors intended to convey every interest which they had in the premises, and that the parenthetical words were not intended to qualify such interest, but only to more particularly designate something which that interest embraced? Any other construction renders it necessary to reject the general words of the grant and conclude that they are without meaning and perform no office except to confuse. Giving to the parenthetical expression the fullest meaning the words thereof may warrant, they disclose no intent on the part of the mortgagors to convey less than their entire interest in the premises. The most that can be said of them in behalf of the defendants is that they do not fully describe all the interest which the mortgagors had. The instrument construed in Young v. Coyle, 3 Pennypacker, 284, is distinguishable from the one now under consideration in that the whole instrument there construed clearly indicated the interest of the parties intended to be conveyed. They expressly stated that they conveyed their interest as heirs of William Coyle. That the grantors, except Robert E. Coyle, did not intend to convey more is manifest from the next sentence, wherein it is stated that Robert E. conveys not only his interest as heir of William Coyle, but also the undivided half of James W. Coyle's interest which was conveyed to Robert by deed. This sentence emphasizes the expressed intent of the preceding one, and from the instrument as a whole the intent of the parties is not doubtful. The cases cited relative to construing general receipts and releases given for money received, when the real consideration for the release or receipt was shown, we do not deem applicable to the pending question.

In view of the facts and the authorities cited, and of the rule that in a deed the words of the grant are to be construed most strongly against the grantor, we are of the opinion that the mortgage to McCalmont covered all the right, title, interest

and claim of the mortgagors in the land described in the mortgage, which includes the lot in controversy, and that the jury were properly so instructed. This conclusion is strengthened by the fact that the mortgagors, in whom the interest, if any, not covered by the mortgage remained, are not claiming as against their mortgage, the question as to the effect of the mortgage being raised by the defendants, who have shown no title to the premises or interest therein further than the fact that they are in possession thereof.

And now, July 1, 1898, the rule for a new trial is discharged and the motion therefor is refused.

*Errors assigned* were ( 1–3) above instructions, quoting them.

*J. S. Carmichael,* with him *F. A. Sayers* and *R. W. Dunn,* for appellants.—Where there are general words all alone in a deed, they shall be taken most strongly against the releasor ; but where there is a particular recital in a deed, and then general words follow, the general words shall be qualified by the particular recital : Bacon's Abridgment, title " Release K " ; Lyman v. Clark, 9 Mass. 235 ; Ballantine's App., 67 Pa. 178 ; Hetherington v. Clark, 30 Pa. 393 ; Karchner v. Hoy, 151 Pa. 383.

*John O. McCalmont,* with him *Bryan H. Osborne,* for appellee, cited Tyler v. Moore, 42 Pa. 374 ; Wager v. Wager, 1 S. & R. 374 ; Watters v. Bredin, 70 Pa. 235.

OPINION BY MR. JUSTICE McCOLLUM, October 6, 1899 :

The plaintiff claims title to the half acre of land .described in the writ, and the defendants claim that his interest in it is limited to " the fee simple in all the coal and other minerals contained therein." The half acre is a part of the seventy-five acres in the possession of Joseph Simcox in 1841, and of which he died seized in 1869. It seems that in 1854 Simcox, on the request of the school board, consented to the use of the half acre for school purposes. In pursuance of the consent thus secured a building was erected in which a school was maintained until 1878, when the location of the school was changed and the building was disposed of at public sale. The right of

the school district to the possession of the lot for school purposes was terminated by the sale, and all that the purchaser acquired by it was the right to the building on his removal of it from the half acre within a reasonable time. As the school district made no claim to the land, and expressly restricted the sale to the building upon it, there is no ground for assuming that the purchaser or his successors acquired by the sale any title to or interest in the lot. In this connection we may add that the undisputed evidence shows that the school district never claimed title to the land, or a right to occupy it for other than school purposes.

It is not shown by the defendants that they have any title to or lawful interest in the land in question. They have no deed or deeds from parties having a title to or interest in it, and they have no valid warrant or claim on which to base their possession of it. The right of the parties under whom they claim is not the right which Joseph Simcox conceded to the school district, but the right acquired by the purchaser of the school building at a public sale of it. As we have already seen the right of the school district was terminated by its abandonment of the lot and its sale of the building upon it, and the right of the purchaser was limited to the building, and enforceable only by a prompt removal of it from the land on which it was erected.

On the trial of the case in the court below, the defendants disclaimed title to all the land described in the writ, except the surface, the gas and petroleum. As already stated, they have not shown any warrant for their possession of the land or any right to any of the minerals underlying it. Their sole defense to the plaintiff's claim is that the surface of the lot, and the gas and petroleum beneath it, did not pass to the purchaser at the sale on the Irwin mortgage. The defense is therefore based on the construction of said mortgage which they allege does not include matters excepted in their disclaimer. It will readily be seen that their construction of the mortgage leaves to the mortgagors the right to the surface of the half acre lot, and the right to the gas and petroleum oil which may be obtained therefrom, while the mortgagors have made no claim to either, and never intimated to any one that they had any right in the lot. after the sale upon the mortgage. That the mortgagors, prior to the execution of the mortgage, had a valid title

to the lot, subject only to the privilege conceded by Joseph Simcox to the school district, is a fact which cannot be denied, and that they intended by the mortgage to pledge all their right and interest in the property as security for the sum of $10,600, which they owed to McCalmont, is clearly shown by the circumstances referred to in the preceding sentence. The mortgagors conveyed to McCalmont as security aforesaid all their right, title, interest and claim . . . . of, in, to or out of the seventy-five acres which the heirs of Joseph Simcox conveyed to Mason and Holmes, and the latter conveyed to Irwin, who with Angell joined in the execution of the mortgage to McCalmont. It will be observed that the half acre lot was expressly reserved by Irwin in his deed to Robinson. Is it a reasonable construction of the parenthetical clause that the mortgagors reserved to themselves the surface of the half acre and the gas and petroleum oil beneath it, while mortgaging the coal and other minerals underlying it as security for the debt they owed to McCalmont? It seems to us that the defendants' construction of the clause in question is directly opposed to the plain intention of the mortgagors and to the general terms of that part of the mortgage which includes it. We conclude therefore that the facts and circumstances we have referred to are sufficient to defeat the defendants' contention and to entitle the plaintiff to a judgment in accordance with his claim. We may add also that, independent of the facts and circumstances to which we have referred, the conclusion arrived at by the learned judge of the court below is sufficiently sustained by the reasons given and the cases cited in his opinion discharging the rule for new trial.

Judgment affirmed.