Brolasky's Estate.

Argued April 20, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Ernest Angell,* with him *Herbert Goldmark,* and *Shippen Lewis,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellants, Perry Allen, and Geo. S. Wright, and Harry

Young and L. J. Belnap, administrators of estate of Nelson Young, deceased.—The evidence offered of the attending circumstances existing at the time of the execution of the alleged instrument of sale was competent and admissible. The evidence shows a clear intention of all parties to the instruments not to include the reversionary interest of the testator.

The intention of the parties should be sought where there is any ambiguity, and attending circumstances may be considered for that purpose: Harten v. Loffler, 212 U. S. 397; Keech v. Trust Co., 297 Pa. 442; Berridge v. Glassey, 112 Pa. 442; Kountz v. Ry., 48 Pa. Superior Ct. 132; Meigs v. Lewis, 164 Pa. 597; Murphy v. Ahlberg, 252 Pa. 267.

The words "said estate being worth about $200,000," following the general language of the assignment, show a clear intention on their face to restrict the assignment to an estate of about that amount: Ewing v. Burnet, 36 U. S. 41; Small Co. v. Refining Co., 267 U. S. 233; Holmes v. Ins. Co., 98 Fed. 240; Fredericks v. Snook, 8 Fed. (2d) 966.

But if the words "said estate being worth about $200,000" do not on their face limit the conveyance to an estate of about that amount, the attending circumstances may be examined to apply such words to their proper subject-matter and, thus examined, such circumstances show an intention to so limit such words.

*Roland C. Heisler,* with him *H. Gordon McCouch* and *Drinker, Biddle & Reath,* for Fidelity and Columbia Trust Co. of Louisville, Kentucky, administrator d. b. n. c. t. a. of estate of Oscar Turner, deceased, and of Charles K. Wheeler, appellees.—Parol evidence is not admissible to show that words in a deed which are neither doubtful nor ambiguous have a meaning different from their ordinary meaning: Benson v. Bank, 20 Pa. 370; Caldwell v. Fulton, 31 Pa. 475; McWilliams v. Martin, 12 S. & R. 269; Gianni v. Russell, 281 Pa. 320; Fellbush v. Egen, 221 Pa. 420; Home B. & S. Co. v. Ruthrauff, 295 Pa. 237.

The title of appellees under these assignments is res judicata by reason of the adjudication of the orphans' court upon the first account of the trustee under the will of Jefferson H. Brolasky and the schedule of distribution thereto attached, approved by the court and by counsel for the present contestants: Kellerman's Est., 242 Pa. 3; Bowers's Est., 240 Pa. 388; Havir's Est., 283 Pa. 292.

Even if the matter were not res judicata and if the parol evidence were admissible, the interpretation of the language of the assignments would result in the same finding: Miner's App., 61 Pa. 283; Smith's Est., 69 Pa. Superior Ct. 376; Waits v. Bailey, 192 Pa. 562.

It is to be noted that the undivided interest is defined as that "in the estate left by Jefferson H. Brolasky by his last will and testament to the Girard Life Insurance, Annuity and Trust Company of Philadelphia in trust." It is not confined merely to property in the hands of the trust company at the time that the assignment was made. It is of any estate left by Jefferson H. Brolasky and it is of "all the undivided interest."

*Ernest Angell*, with him *Herbert Goldmark*, and *Shippen Lewis*, of *MacCoy, Evans, Hutchinson & Lewis*, for Harry Young, L. J. Belnap, Harry Young and L. J. Belnap, administrators of estate of Nelson Young, deceased, appellants.—A. Wellington Wallace and his personal representatives are now estopped to assert any interest under the conveyance of November 4, 1903, from Mary J. Cohen Young in these properties because of the contrary and adverse claim asserted by A. Wellington Wallace in 1908: Share v. Anderson, 7 S. & R. 43; Miller v. Springer, 70 Pa. 269; Kellerman v. Miller, 5 Pa. Superior Ct. 443; Phillips v. Crist, 33 Pa. Superior Ct. 445.

The decree of March 24, 1909, is not the law of the case with respect to the rights of Wallace as assignee and of Mrs. Young as assignor.

A. Wellington Wallace is estopped to assert any claim to these properties under the Young assignment because at the time he received the assignment he was a trustee of these properties.

Trustees de son tort are bound by the same rules as express trustees.

*A. H. Wintersteen,* of *Wintersteen, McCoy & Wintersteen,* with him *H. Justice Williams,* for H. Lewis Wallace, Maxwell G. Wallace, Charles Wallace, A. Hansford Wallace and George A. Scott, executors of A. Wellington Wallace, deceased, appellees.—The parties in the litigation in the Court of Common Pleas No. 1 brought by Victoria Brolasky Stevens Wallace and those litigating the present issue are not the same: Bell v. Bell, 287 Pa. 269.

The inconsistent position relied upon to raise an estoppel was not successfully maintained.

Neither the parties now claiming the estoppel nor Mrs. Young or her husband were misled to their prejudice or caused to change their position in any way by the proceedings in the Court of Common Pleas No. 1.

The laches of the appellants and that of Mary J. Cohen Young and her husband, Nelson Young, under whom they claim, deprive them at this late date of the right of challenge of the A. W. Wallace purchase: Bruner v. Finley, 187 Pa. 389; Musselman v. Eshleman, 10 Pa. 394; Church v. Winton, 196 Pa. 107; Herbert v. Trust Co., 269 Pa. 306.

OPINION BY MR. JUSTICE LINN, September 26, 1932:

Testator, Brolasky, died in 1886. In 1900, his niece, Mrs. Hughes, a beneficiary, by formal deed duly recorded, sold and assigned all her interest in his estate for $10,000. In 1908, for $1,000, she made a second assignment, the terms of which are not printed. Appeal, No. 175, is a contest between the two assignees, or parties claiming under them, and the only question is whether her whole interest passed by the first deed.

Testator gave his residuary estate to the Girard Trust Company, trustee, on certain trusts. The residuary estate consisted of (1) real and personal property vested absolutely at the date of his death, and (2) contingent reversionary interests and remainders under deeds of trust, one of which was considered in Brolasky's Est., 302 Pa. 439, 153 A. 739. The property in the first class (for convenience here called "absolute property") duly came into the administration of the trustee in 1886. The second class (here called "trust property") did not reach its custody until 1909 when it was awarded to the trustee by decree of the common pleas. This "trust property" consisted of two classes: (a) that considered in Brolasky's Est., supra, in which Brolasky had a contingent reversionary interest; and (b) real estate and a mortgage, granted and conveyed to him as trustee for the benefit of his adopted daughter Victoria (married to one Wallace) for life, and, on her death without issue (which happened), "in trust for the use of him the said Jefferson H. Brolasky, his heirs and assigns for ever."

The residuary estate was given in trust to pay the income to testator's wife for life, then to his adopted daughter Victoria for life, and, at her death without issue and after paying certain pecuniary legacies, to deliver the balance of principal to testator's nephews and nieces in equal shares. On the death of Mrs. Wallace in 1927, without issue, testator's wife having died in his life time, the trustee filed its account. It was audited in 1929, and the fund for distribution was awarded to the nephews and nieces,—the assignor, Mrs. Hughes, being one of them,—each receiving one-eleventh, subject to prior assignments. No appeal was taken from that distribution.

The administration of the "trust property" was not included in the account audited in 1929 for the following reason: Though Victoria Wallace was entitled to the income for life, she seems wrongfully to have taken charge of the property at Brolasky's death and for some

time to have managed, or caused it to be managed, as her own. On October 13, 1903, she was adjudged a lunatic by a court in Virginia, and her husband was appointed committee. On July 6, 1908, acting by her husband and next friend, she filed a bill in Common Pleas No. 1 of Philadelphia County, averring that she was the owner of the property and praying for a decree that she enjoy it free of the trusts. Among the defendants named in the bill were Mrs. Hughes, and also the assignees of her interest by the first assignment, the second not having yet been made. Before this suit was tried, it was discontinued, February 27, 1909. Two days prior to the discontinuance, however, a number of parties who claimed interests in it (Mrs. Hughes and her assignees by both assignments, among them) filed their joint petition in the record of the equity suit, and asked for the appointment of a trustee to administer this "trust property." Among other averments, the petition contained one that, until the bill was filed, petitioners "had no knowledge whatever of their rights under the above recited deeds" to the "trust property." Wallace was made respondent individually and as committee for his wife; he answered the petition by saying (so far as it is necessary now to state the answer) that he believed the averments of petitioners and joined in the prayer for the appointment of a trustee. On that petition the common pleas appointed the Girard Trust Company. In 1928, after the death of the life tenant, the trustee filed its account of the "trust property" in the common pleas. It was referred to an auditor who decided that the fund passed to the trustee under the will and that the trustee must account in the orphans' court. This report was confirmed by the common pleas: Brolasky's Est., supra. The trustee then filed in the orphans' court its second account composed of the proceeds of property ordered to be retained in 1929 for further accounting, and the proceeds of this "trust property."

At the audit, claim was made by appellees to one-eleventh (in right of Mrs. Hughes) under her deed of 1900, and also by appellants claiming through the assignment of December 29, 1908. Under the earlier deed appellees claimed the niece's share on the ground that decedent's estate at all times had an interest, though contingent, in the proceeds of the "trust property" and that it passed to them by the words of the deed to be quoted presently. Appellants, standing on the later assignment, based their claim on an allegation that neither Mrs. Hughes nor her assignees in 1900 knew that Brolasky's Estate had any interest in the "trust property," and therefore could not have intended it to pass, and that the deed expressly limited the interest granted to the "absolute property" by the estimate of $200,000 as the value of the whole estate, a clause also now to be considered. The learned court below was of opinion that the words of the grant included the assignor's interest in the whole estate and made an award accordingly. This appeal is by parties claiming through the second assignment.

By her deed of 1900, (using all the terms commonly used in the sale of land) she sold "all the undivided interest to which she is now or may at any time hereafter be entitled in the estate left by Jefferson H. Brolasky by his last will and testament to the Girard Life Insurance, Annuity & Trust Company of Philadelphia, in trust, said estate being worth about $200,000, together with all ......the reversion and reversions, remainder and remainders, rents, issues and profits thereof and of every part and parcel thereof and also all the real estate, right, title, interest, property, possession, claim and demand whatsoever, both in law and equity, of the said party of the first part in and to the said estate with appurtenances; [and she agreed] for herself, her heirs and assigns, that she and they will at any time hereafter make any further deeds, release, conveyance or other assurances of title which may be necessary to completely re-

38 .

lease and divest her or their interest in the estate herein conveyed or which the said parties of the second part, their heirs or assigns, may desire."

It is in the interpretation of those words that the parties to this appeal differ, and, to support their interpretation, appellants rely on parol evidence. We think the evidence was clearly insufficient to establish their contention.

What was the subject of the grant? Decedent's residuary estate—vested and contingent—had been "left" to the trustee; and "all the undivided interest" of the grantor in the estate "left" to the trustee appeared to be the subject of the grant. If the words "said estate being worth about $200,000" were not in the deed, appellants would doubtless have made no claim, for there could then obviously have been no difficulty in agreeing upon the meaning of the words used. It is elementary that, when necessary to identify the subject of the grant, evidence dehors will be received to show the sense the words bear with respect to the surrounding circumstances concerning which they were used, but that such evidence may not be received to show that words with a fixed definite meaning were intended by a party to mean something different from what is clearly stated in the deed. It is not contended that this is a case for the reformation of the deed on the ground of fraud, accident or mistake. There can be no dispute about what was "left" to the trustee by the will; it included the "trust property" now for distribution (Brolasky's Est., supra), which, therefore, was part of the estate in which the grantor sold all her interest. Conceding that this "trust property" was "left" to the trustee, appellants, nevertheless, contend that Mrs. Hughes's interest in it did not pass by the deed, because in 1900, when the deed was made, the estate was worth much more than $200,000; they contend that the words "said estate being worth about $200,000" were used in the deed with the intention of restricting the subject of the grant, and for the pur-

pose of showing that the subject was not "all the undivided interest to which she is now or may at any time hereafter be entitled in the estate left......to the Girard Trust Company in trust," but only a part of it. Accordingly, subject to objection by and exception granted to appellees, appellants produced evidence, which the court permitted to go into the record, to the effect that in 1900, part of the property "left" to the trustee—the "absolute property" alone—was worth $293,300; and that the "trust property"—which is to be distinguished from the decedent's contingent interest in it—was then worth $132,617. They add these sums, notwithstanding that the contingent interest in the "trust property" and the vested interests in the "absolute property" were dissimilar units, and contend that the total is so much in excess of $200,000 that the assignor's interest in the entire estate cannot have been intended to be the subject of the grant.

The contention must fail. In dealing with it, we note, first, that in 1929, when the trustee's account of the "absolute property" (said to have been worth $293,300 in 1900) was adjudicated in the court below, no objection was made by present appellants, or any one else, to the award to appellees of their grantor's share in the proceeds (then in excess of $300,000) notwithstanding the great disparity, now relied on, between $200,000 and the actual value shown in the account. In other words, these parties, and the court, without objection, treated the words "said estate being worth about $200,000," as generally descriptive, and not as a stipulation expressing an intention to restrict the assignor's grant to her share in a $200,000 interest in the estate or to an estate of "about" that value.

It is next to be noted that, at the audit of the account now before us, appellants showed, as has been stated, that the "trust property" involved was worth $132,600 in 1900. But that evidence is of no value in arriving at the expressed meaning of the parties to the deed, because

in 1900 the interest of decedent's estate in this property was merely contingent, or liable to be divested; there is no evidence of the value of the interest in that contingency. But if there was any market whatever for it, there is evidence that its value must have been far from the then value of the real estate; on this subject we have the very positive declaration of Mrs. Hughes and appellants' assignors to that effect; for as late as 1908, Mrs. Hughes purported to sell to them a one-eleventh share in it for only $1,000. There is, therefore, no evidence in the record to support any finding that the decedent's entire estate, vested and contingent, was in 1900 worth much, if any, more than $293,000, the sum which all parties agreed, and which the court held, was not inconsistent with the descriptive $200,000, when the distribution.of 1929, unappealed from, was made. Indeed, so natural is it to regard the words as descriptive, that in appellants' brief they say at one place that "the value of the estate which the parties knew about was *described* in the conveyances as 'about $200,000.'"

Appellants present another point, which the evidence they rely on does not support, so that we need not consider what the effect would be if the evidence supported the suggested fact. It is based on the petition presented to the common pleas in 1909. As affecting the weight that could be given to it as evidence, we first note that the petition was not executed personally by Mrs. Hughes or by appellees, but only by their attorneys; it was sworn to by E. M. Brolasky, assignee by the assignment of 1908, under which appellants claim, as "true and correct to the best of his knowledge and belief." An averment in the petition states that, until the filing of the bill by Wallace against the petitioners, they "had no knowledge whatever of their rights under the above recited deeds," i. e., the deeds for the "trust property" in which the estate was contingently interested. On the averment so made in the petition for the appointment of a trustee, appellants now make a contention in these

words: "that neither of the parties to the assignments at the time thereof knew of the existence of the 'trust' properties which it is now claimed are covered by such assignments." It will be noticed that the contention is something quite different from a denial of "knowledge of their rights." There is no averment that they did not know of the "trust properties" or of the reversionary and remainder interests in it of Brolasky's Estate. While the averment of the petition, if received in evidence in this proceeding, would be subject to explanation or denial by the appellee-petitioners (Com. ex rel. v. Monongahela Co., 216 Pa. 108, 116, 64 A. 909) it can now go no further in this case than it says, i. e., that the parties did not know their "rights" under the deeds. The averment is consistent with the fact that Mrs. Hughes and her grantees knew of the deeds, which had been recorded long before testator died; she is not excused for not knowing the law and therefore the meaning of the deeds; without more than the averment quoted, the court may not find as a fact that they did not have such knowledge. Moreover, what do they mean when they say they did not know their rights? Do they mean that Mrs. Hughes, as a niece and heir, was in doubt whether she would take by purchase on the death of the life tenant, or by descent, or was she ignorant in some other respect? But it is settled that this court cannot speculate about it. "Why should we make such assumption when the effort is to have us reverse the action of the court below? If any assumption is to be made it is to be with respect to facts which make for the support of the action of the court rather than its defeat. Clearly it was the business of the appellant......to develop the facts on which an intelligent conclusion could rest:" Kellerman's Est., 242 Pa. 3, 14, 88 A. 865.

Returning now to appellants' contention that "the assignment by virtue of the qualifying words 'said estate being worth about $200,000' is ambiguous on its face," and that those words "on their face restrict the assign-

ment to an estate of about $200,000," it must be conceded that, in the absence of those words, there could be no doubt that the general words preceding them would convey the grantor's entire interest. The law presumes that a man intends the legal consequences of his words. A general clause having definite legal import, as here, is not limited by subsequent words, when another reasonable construction for them can be found (Anderson v. Nesbit, 2 R. 114; Miner's App., 61 Pa. 283; Waits v. Bailey, 192 Pa. 562, 44 A. 262; Fellbush v. Egen, 221 Pa. 420, 70 A. 816) because in such circumstances the deed is to be construed most strongly against the grantor: Miner's App., supra; Smith's Est., 69 Pa. Superior Ct. 376, 386; Advance I. S. Co. v. Eagle, M. C. Co., 267 Pa. 15, 109 A. 771. Now, as these appellants, with others at the audit of the first account in 1929, treated the words "said estate being worth about $200,000" as merely descriptive and not as restrictive, and as that was apparently the purpose of inserting them, we can see no reason why they should not continue to be so considered. General words of conveyance must be understood with reference to the estate to which the grantor was entitled at the time of the grant, and, where the meaning of the words is clear, the intent must be gathered solely from them. The meaning of this deed is apparently clear, as the parties themselves seem to have understood at the first audit; it is not ambiguous to the extent of being reasonably capable of more than one construction. Such evidence as was received to interpret the deed by identifying the subject-matter of the grant, was properly received; but the evidence offered to show that some unexpressed intention should nevertheless be given effect, was properly excluded from consideration: Benson v. Miners Bank, 20 Pa. 370, 373; Caldwell v. Fulton, 31 Pa. 475, 489; Laidley v. Rowe, 275 Pa. 389, 396, 119 A. 474; Fellbush v. Egen, supra.

No. 176 involves a contest between parties claiming under a deed of assignment by testator's nephew, Joseph

B. Brolasky, made in 1900, and parties claiming under an assignment by him made in consideration of $1 on January 20, 1909. The record raises the same question considered in Appeal No. 175, and for the reasons given, this appeal must also be dismissed.

No. 177 is a third appeal on the same record, but raising a different question. On November 4, 1903, Mary J. Cohen Young, testator's niece, with her husband and their children, sold all their interest in the estate to A. Wellington Wallace and another whose personal representatives are appellees. The only question involved (all others having been withdrawn at the oral argument) is thus stated by appellants: "Can a person in the position of a constructive trustee profit by a transaction with a beneficiary of the trust without showing that a full disclosure of the interest of the beneficiary was made to her at the time of the transaction?" The record does not disclose facts raising the question. The suggestion is that as Wallace was appointed committee in lunacy for his wife, October 13, 1903, and a few weeks later purchased the interest of the Youngs, he was a constructive trustee, wherefore, it being averred that no disclosure was made, his personal representative is now not entitled to receive one-half the fund for distribution (no question being raised as to the other half). This point was not thought of at the audit (reliance there being placed on estoppel) but was first presented below to the court in banc, when exceptions to the adjudication were argued.

The evidence in the record does not support the conclusion that Wallace was acting in the fiduciary capacity suggested; that lack of evidence may, of course, result from the fact that the point was not thought of at the audit; or it may be that, as Wallace and Mrs. Young and others interested had died, additional evidence could not be procured. We must, however, take the record as it is. Not only is there no evidence of the de facto trusteeship, but it does not appear that the grantors were not fully informed of all the circumstances. Apart from

44

those considerations, too, the delay in asserting the alleged right is fatal, whether calculated from the date of the deed in 1903, or from the date of the equity proceeding in 1908 (to which Mrs. Young's assignees were parties) which reveal such connection with the "trust properties" as Wallace had: Ashurst's App., 60 Pa. 290, 315; Bruner v. Finley, 187 Pa. 389, 403, 41 A. 334; Church v. Winton, 196 Pa. 107, 110, 46 A. 363.

In each appeal the decree is affirmed, appellants to pay the costs.