## Case Estate

*Eastburn & Gray*, for petitioner.
*Bunting & Satterthwaite*, for trustee.

SATTERTHWAITE, J., November 21, 1952.—The trust presently in question arose under the will of Edward G. Case, who died a resident of Doylestown Borough, Bucks County, Pa., on January 8, 1929, leaving a will dated April 12, 1922, wherein he provided, among

other things, for a life estate in favor of his wife, Elizabeth K. Case, in his entire estate, with remainders upon her death as follows:

"I give and bequeath to the Doylestown Trust Company the sum of three thousand dollars, in trust, to invest the same and keep the same invested, and pay the income arising therefrom, after deducting all legal charges, to my daughter, Harriet M. Case, semi-annually during the term of her natural life, and at her death to pay the principal of said trust fund to her children. In the event that she should die without leaving any children or children of any deceased child at the time of her death, I direct that the said principal sum shall be paid to my son, Claude E. Case.

"The remainder of my estate I direct shall be divided into two equal parts, one equal part thereof I give and bequeath unto the Doylestown Trust Company, in trust, under the same conditions as are set forth in the preceding clause of my will relating to the bequest of three thousand dollars to said Trust Company, in trust for my said daughter.

"The remaining equal part thereof I give and bequeath unto my son, Claude E. Case. In the event that both my said son and daughter should die before my said wife, without leaving any child or children, then I direct that my said residuary estate shall be paid to the Deaf and Dumb Home situate in the Borough of Doylestown."

Testator was survived by his widow, Elizabeth K. Case; his son, Claude E. Case, and his daughter, Harriet M. Case, who by marriage is now known as Harriet C. Rutherford, petitioner in the within proceedings and the only present survivor. There was no other child or issue of any deceased child.

Testator's son died on January 7, 1934, married but without issue, a resident of the State of New York, leaving a will whereby he gave his entire estate to his

wife, Emily Radcliffe Case, and made her executrix. Testator's widow survived her son and died on September 2, 1935, a resident of the Borough of Doylestown, Bucks County, Pa., leaving a will whereby she devised her entire estate unto her daughter, petitioner herein. Thereafter, pursuant to an amicable family settlement and agreement in compromise of disputed questions of distribution and in avoidance of threatened litigation (which settlement and agreement had been authorized and approved by the Surrogate of Ontario County, N. Y., as to the estate of Claude E. Case, deceased, and by the Orphans' Court of Bucks County as to the estate of Edward G. Case, deceased), Emily Radcliffe Case, individually and as sole legatee and executrix of the estate of Claude E. Case, deceased, for a substantial valuable consideration paid to her by way of distribution out of the corpus of the trust, transferred and assigned to petitioner all interest in the estate of Edward G. Case, original testator.

By reason of the death of her mother and this assignment of the interest of the representative of her brother, as well as by reason of the fact that she is the sole surviving heir and next of kin of her father, petitioner takes the position that she, in fact, is and can be the only possible party now interested in this trust. She contends that it is physically impossible for her to have children and therefore the limitations in testator's will of the remainder to her issue can never take effect and have failed. Accordingly, she presented the within petition asking for a judicial declaration by this court that said trust be terminated and the principal thereof paid over to her outright. A preliminary order was entered directing petitioner to submit to an examination by two physicians and appointing a guardian ad litem for any unborn and unascertained person who might be interested in the trust under the terms of testator's will.

At the hearing subsequently held, the following additional facts appeared: Harriet C. Rutherford, petitioner, was born on January 21, 1896, and is presently 56 years of age. She was married on June 17, 1925, to Raymond L. Rutherford. She has no children and never has had children, never having been pregnant. She completed the menopause approximately 10 years ago. Both physicians testified that they had examined petitioner and that in their professional opinions it was now impossible for her to bear a child. They further testified that in their professional experience of 36 years and 18 years of active practice respectively, they never knew of a woman of petitioner's age and who had completed the menopause for a period of 10 years who thereafter bore a child. They stated that they also believed this to be the opinion of the medical profession generally. One of the physicians also testified to a definite physiological condition of petitioner's person which would make pregnancy impossible, a so-called senile atrophy of the pelvic region. The court is convinced by this testimony and therefore finds as a fact that petitioner is physically incapable of procreation.

The trustee has submitted itself to the jurisdiction of the court, neither joining in the prayer of the petition nor actually opposing it. An accounting of its administration of the trust has been filed showing the corpus to be presently composed of personal property of an approximate value of $34,000, together with one parcel of real estate of an approximate value of $12,000.

The present proceeding must be determined solely by the answer to the legal question as to whether or not the remainders to petitioner's issue may, at this time, be held to have failed so that petitioner may be said, as a matter of law, to be the only party, whether

in esse or not, who can possibly be beneficially interested in this trust. Since no spendthrift or sole and separate use trust provisions or other unfulfilled trust purposes are involved, if petitioner be the sole party interested in the legal sense, the trust should be terminated at her request: Stafford's Estate, 258 Pa. 595. If she not be the sole party so interested, we have doubt as to our authority to grant the prayer of her petition on the present record. We point this out because some of the cases, factually somewhat similar to that here presented, have termined trusts, even without the consent of all parties beneficially interested, on the ground that the purposes of the trust have failed, that is, that by reason of circumstances unknown to and not anticipated by testator the continuance of the trust would substantially impair the purposes of the trust: A. L. I. Restatement of the Law of Trusts, §336. Compare section 2(a) of the Estate Act of April 24, 1947, P. L. 100, 20 PS 301.2, effective as to trusts created after December 31, 1947. See, for example, Auchu's Estate, 38 D. & C. 33; Holmes Estate, 66 D. & C. 612; Honeywell Estate, 70 D. & C. 472, and Kelby Estate, 80 D. & C. 1, in all of which at least one of the grounds for termination of the trust was the unanticipated inadequacy of the corpus to realize sufficient income to fulfill the fundamental object of providing comfortably for the primary beneficiary of the trust. On the record in this case, we cannot make such a finding. Therefore, we do not rest our decision on this ground.

We are satisfied that petitioner is the only party presently in being who is beneficially interested in the trust. Whether the limitations in the will of her father for the benefit of her brother be deemed vested subject to being divested upon the birth of a child to petitioner (Packer's Estate (No. 2), 246 Pa. 116; McGlinn's Estate, 320 Pa. 389), or whether they be considered

contingent until the death of petitioner without issue (Estate of Rebecca Moss, 80 Pa. Superior Ct. 323; Riegel et al. v. Oliver et al., 352 Pa. 244), the interests thereby bequeathed could be and were assigned to petitioner by the executrix and sole party interested in the brother's estate: Brooke's Estate, 214 Pa. 46; Packer's Estate, supra; Brolasky's Estate, 309 Pa. 30; Cunningham's Estate, 340 Pa. 265. Even if the contingency annexed to the gift to Claude E. Case be considered to go to the identity of the party to take upon petitioner's death without issue, so that the remainder limited to him would fail upon his prior decease and an intestacy would result, petitioner is the only remaining heir of her father and succeeds, by the will of her mother and the assignment from the representative of her brother, to the interests of all the other heirs.

The provision in testator's will for the deaf and dumb home clearly has no present relevancy since it was expressly conditioned upon the death of both testator's son and daughter without issue before their mother, an event made impossible upon petitioner's surviving her mother's death. While it may be the duty of the court to carry out the implied intention of a testator upon the happening of a contingency not expressly provided for by the will, such intent must be ascertained from the language of the will itself; the court may not provide for an event which appears to have been absent from testator's mind entirely: Riegel et al. v. Oliver et al., supra, and cases cited therein at page 248. See also, Heywood's Estate, 50 D. & C. 443, and cases collected and discussed therein. We find no justification from the language of the present will to imply an intention to make provision for the home under the circumstances which actually came about. Testator manifestly intended that the home should

benefit only if his family line of descent became extinct and not then unless his wife should be the last survivor of those closest to him. In face of this plain and unambiguous language, we cannot ignore either of these conditions. We cannot rewrite his will by conjecturing that he might have intended something different from what he said if he knew the facts which actually transpired. We cannot deny effect to the double contingency expressed by testator in this case any more than the Supreme Court could have in English's Estate, 242 Pa. 545, where the gift over was conditioned upon the death of the life tenant "before reaching the age of thirty years, and without leaving surviving issue." Upon the death of the life tenant long after attaining 30 years, but without issue, it was argued that the gift over took effect, thus avoiding an intestacy. The Supreme Court, however, refused so to decide, stating at page 549:

"This would be an easy solution of the present controversy, but it would ignore the meaning of plain language and would strike down one of the contingencies which the testatrix thought proper to annex to the right of taking the gift over."

We need not be concerned with the possibility that petitioner might hereafter adopt a child or children. Such adopted persons would not be "children" within the meaning of the word as used in testator's will. Prior to the Wills Act of June 7, 1917, P. L. 403, it was the established common-law rule that adopted children could not participate in bequests to "children," and section 18(b) of that act changed this rule as to children of one other than testator only so as to include children adopted before the date of the will: Biddle Estate, 66 Montg., Law Rep. and cases cited therein. Notwithstanding that they have no application to the present case, since within testator died during

the effective operation of the Wills Act of 1917, it is of some interest to note that even the Wills Act of April 24, 1947, P. L. 89 sec. 14(6), 20 PS §180.14, and the Estates Act of April 24, 1947, P. L. 100, sec. 14(3), 20 PS §301.14, which continued the legislative advance toward favoring and placing adopted children on the same footing as natural children, would not permit any child hereafter adopted by petitioner to take under testator's will. Even under those statutes, the child must have been adopted prior to testator's death in order to take as would a natural child.

This brings us to the real heart of the case. Notwithstanding that we are convinced, as a matter of fact, beyond any reasonable doubt, that petitioner is sterile, do we have the legal power to make a finding, during her continued lifetime, that the possibility of issue has become extinct and the remainders to her children under her father's will have failed? It must be conceded that the old common-law rule, based on the indelicacy of the subject and the uncertainty of proof then available, called for an arbitrary and irrebuttable presumption that the possibility of bearing children exists indefinitely and that there is no age beyond which it could be said judicially that the possibility of issue became extinct: List v. Rodney et al., 83 Pa. 483; Westhafer v. Koons, 144 Pa. 26. Nevertheless, the more realistic modern approach recognizes that the reasons for the rule have long since disappeared with the advances in medical knowledge and the vast statistical data now available. From the later cases we conclude that the rule has been modified so that the presumption, although still subsisting, might be overcome by conclusive proof to the contrary.

It has long been recognized that, notwithstanding this presumption of indefinite possibility of issue, a trust of personalty may be terminated and distributed

to the party taking in default of issue upon his giving
a refunding bond therefor if, as a practical matter,
the court is satisfied that the possibility of issue is
negative: Gowen's Appeal, 106 Pa. 288; Snyder's
Estate, 17 Dist. R. 270; Van Beil's Estate, 18 Dist. R.
512; Daly's Estate, 26 Dist. R. 299; Meckley's Estate,
50 Lanc. 271; Bell v. Lebanon County Trust Company,
66 D. & C. 624; Macfarlan Trust, 1 Fid. Rep. 367.
Despite the fact that the opinions in every one of these
cases paid lip service to the legal possibility of issue
indefinitely, in none of them, except the Bell case, was
any security required to guarantee the distributee's
refunding bond, and in the Bell case the life tenant
herself volunteered to furnish security, it being readily
available in the form of assignable interests for her
benefit in other trusts being administered by the same
trustee.

Moreover, there are still other recent cases which
have terminated trusts in this situation, upon other
grounds, where the language of the opinions, although
ostensibly regarding the common-law rule as still in
force, indicates lack of sympathy and even disapproval
of the rule. See, for example, Holmes Estate, 66 D. &
C. 612, wherein Judge van Roden, of the Orphans'
Court of Delaware County, after disposing of the case
under the failure of purpose doctrine as well as cer-
tain principles of construction, commented that his
result was justified by the equities in that the likeli-
hood of future issue was practically, if not legally,
extinct. Also, in Macfarlan Trust, 1 Fid. Rep. 367,
Judge Klein, of the Orphans' Court of Philadelphia,
although permitting only partial termination and re-
quiring a refunding bond without security, cited with
apparent approval the Lare, Barnsley and Leonard
cases hereinafter discussed and refused to terminate
the trust in toto not because of any lack of power to

determine whether the possibility of issue was extinct, but rather because he was not convinced of that as a factual matter of proof, the life tenant being 54 years of age and still in the stage of menopause.

Finally there are still other recent cases, decided by learned and respected orphans' court judges, which are on all fours with the situation presented by the instant record and which definitely hold that the common-law presumption may be rebutted.

The first of these is Lare's Estate, 57 D. & C. 163, wherein the will provided for a trust for Marion J. Bathrick for life, remainder to her issue, if any, and in default of issue to her mother or her mother's heirs. The life tenant was 70 years of age and childless, having completed the menopause 20 years previously, and was the only heir of her mother who had previously died. The Orphans' Court of Montgomery County found as a fact that it was impossible for her to have children and terminated the trust, awarding the $4,500 corpus to the life tenant without requiring security. In the course of his opinion Judge Holland commented as follows, at pages 164-65:

"At common law there was a conclusive presumption that a woman could give birth to a child up until the time of her death, regardless of age, which conclusive presumption could not be rebutted by evidence. This rule has in more recent times been modified and evidence of the impossibility of a woman having a child can be adduced and if sufficiently conclusive the court can act upon it. . . .

Were this trust not stricken down at this time and the principal awarded to Marion J. Bathrick, we would have the absurd situation of the principal of the fund going to her estate at the time of her death and thence to the beneficiaries under her will, or, if she left no will, then to her heirs under the intestate laws."

The Lare case was followed in Barnsley's Estate, 59 D. & C. 653, also arising in Montgomery County, where the trust consisted of a fund of approximately $12,000 and the life tenant, by reason of the death of other parties in interest, had become the only party entitled in remainder. She was 58 years of age, childless and not in good health. She had experienced her menopause about six years previously. After finding as a fact that it was impossible for her to have children and referring to the opinion in the Lare case, Judge Holland further mentioned the statistics of the United States Department of Commerce cited in City Bank Farmer's Trust Co. v. United States, 74 F. 2d 692, to the effect that between the years 1923 and 1932, out of a total number of births of over 20,000,000, there was no record of any child born to a woman of 55 years of age or older. Accordingly, he terminated the trust and directed distribution to the life tenant without bond, again commenting on the absurdity of depriving her of the fund up to the moment of her death and then awarding it to her estate.

In Leonard's Estate, 60 D. & C. 42, the Orphans' Court of Dauphin County terminated a trust under almost identical circumstances where there was testimony that the life tenant was 57 years of age and childless. Expert opinion was given that by reason of her age and atrophy of the sexual organs she would be unable to conceive or bear a child. Judge Richards likewise commented upon the absurdity of continuing the trust, the life tenant being entitled to the remainder upon her death without issue. There was no discussion of the common-law presumption.

The Orphans' Court of Philadelphia has also adopted the more modern rule. In Batchelor Trust, 1 Fid. Rep. 365, and in Cranston Trust, 1 Fid. Rep. 363, similar trusts were terminated without discussion and

without the requirement of security, upon proof that hysterectomies had been performed upon the life tenants, 69 and 34 years of age, respectively, rendering it physically impossible for either of them to have children.

The most recent case on the subject appears to be Kelby Estate, 80 D. & C. 1, 5, where the Orphans' Court of Philadelphia terminated a trust in face of the more difficult question of sterility of a male life tenant aged 64 years. The proofs consisted of the opinions of recognized medical authorities, after examination and treatment, that it was physically impossible for him to have issue in the future. The report of the case contains a comprehensive review of all of the above authorities and sets forth the following quotation which is particularly applicable to the facts of the within case:

"In recent years medical science has progressed rapidly in diagnosis and prognosis. What formerly was mere conjecture is now accepted fact. Even so, the medical profession can speak with absolute and uncontrovertible certainty on only a limited number of matters. Nonetheless, in other fields of the law the courts have been content to accept medical opinion and adjudicate cases involving life, liberty and property upon the basis thereof. Daily, physicians testify as to the extent of injuries and the disability flowing from them in tort cases and juries and judges return verdicts based on such opinion. Likewise, psychiatrists testify as to their opinion of the sanity or insanity of defendants in capital cases and juries and judges impose or withhold even the death penalty on such opinion. In other cases, on the basis of similar medical opinion, individuals may be deprived of their freedom and confined in mental institutions.

"The difficulty of ascertaining with exactness and

definiteness that a man is sterile is conceded. However, it appears that such a diagnosis is no more uncertain than that in each of the above illustrations. There seems to be no justification for courts not to make a finding of sterility of a male where the medical facts strongly so indicate. For example, if a man by surgery or accident has been castrated, his sterility can be determined absolutely. So also, in case of disease and similar situations."

Judge Lefever found as a fact that the life tenant was incapable of having issue and, since he was the only party interested, terminated the trust without requiring security. While it is true that the opinion further goes on to discuss the "failure of purpose" doctrine, in view of the amount of the trust of approximately only $2,000, and holds that the trust could have been terminated on that ground alone, nevertheless the whole context of the opinion indicates that the most authoritative orphans' court in the State of Pennsylvania has clearly approved of the doctrine set forth in the Lare case and followed in the Barnsley case, supra.

In view of these precedents, with which this court concurs, we feel justified in finding, as we have, that petitioner is incapable of having issue and that therefore the remainders under testator's will for such issue can never take effect and may, at this time, be legally held to have failed. Accordingly, we make the following order and decree

And now, November 21, 1952, the court finds that petitioner Harriet C. Rutherford is and can be the only person beneficially interested in the trust under the will of Edward G. Case, deceased, and her petition to terminate the same therefore should be and hereby is granted. Its account having been confirmed absolutely, trustee is authorized and directed to pay and

distribute unto petitioner the entire balance for distribution therein set forth, together with any additions thereto less any deductions therefrom which may have accrued, including compensation to the trustee, in accordance with the stipulation of counsel filed November 7, 1952. Leave is given to make any and all necessary assignments and transfers, either to petitioner for distribution in kind or to others in sale and liquidation; leave is also given to the trustee to execute and deliver a quitclaim deed to petitioner or her nominee for the real estate. Costs to be paid out of the estate.